# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-510V
UNPUBLISHED

| | |
|---|---|
| PYUL HORBELT,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: November 24, 2025 |

*Bridget C. McCullough, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Alec Saxe, U.S. Department of Justice, Washington, DC,* for Respondent.

**RULING ON ENTITLEMENT**[1]

On January 11, 2021, Pyul Horbelt filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered the Table injury of a left shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on August 22, 2020. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, and after holding an expedited hearing on entitlement, I find that Petitioner is entitled to compensation.

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.   **Relevant Procedural History**

This case was activated from "pre-assignment review" on June 2, 2022. (ECF No. 21). The parties' attempts at informal resolution were hampered by a discrepancy regarding Petitioner's site of vaccination – therefore, while Respondent's contesting Rule 4(c) motion was pending, I allowed Petitioner to file a Motion for a Fact Ruling regarding the site of her vaccination at any time. On July 17, 2023, Petitioner filed a Motion for Ruling on the Record. (ECF No. 30). On the following day, Respondent filed a status report stating that he did not believe the case was appropriate for compensation, and he followed up with his Report and a responsive brief on August 14, 2023. (ECF No. 32). Petitioner filed a Reply brief on January 25, 2024. (ECF No. 36).

On October 8, 2025, I proposed this case for an expedited hearing on November 17, 2025, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. (ECF No. 38). The parties agreed, and the hearing took place as scheduled. During the hearing, I orally ruled on Petitioner's entitlement to compensation. This Decision memorializes those findings and determinations.

I.   **Relevant Medical History**

A.  **Medical Records**

On August 22, 2020, Petitioner received a flu vaccine at a CVS pharmacy. Exhibit ("Ex.") 3 at 3. Documentation provided by the pharmacy indicates the vaccine was administered in Petitioner's right deltoid. *Id*. In a February 8, 2022 affidavit, Petitioner states that "[t]he vaccine was given very high on [her] left shoulder and [she] felt pain as it was being administered." Ex. 2 at 1. Petitioner further states that "[a]bout a week or so" after she received the flu vaccine, she returned to the same CVS pharmacy and "reported the incident surrounding [her] vaccine to the pharmacist on duty." Ex. 2 at 1.

Twelve days post-vaccination, Petitioner went to her primary care physician ("PCP") Dr. Frank Contacessa complaining of left shoulder pain "for the last 10 days." Ex. 7 at 33. She reported that she received a flu vaccine at her local pharmacy and that the injection was "very painful" and had "not stopped hurting since." Id. Dr. Contacessa noted no redness or swelling in Petitioner's left shoulder, but did note that she had pain with palpation above her deltoid and pain that limited her range of motion ("ROM"). *Id*. at 33-34. Petitioner's physical examination was otherwise unremarkable. *See id*. at 34. Dr. Contacessa diagnosed Petitioner with acute pain of the left shoulder, noted that he doubted there was any structural damage, and prescribed her a course of Meloxicam for her pain. *Id.*

Nineteen days later, on September 22, 2020, Petitioner saw Dr. David Kovacevic, an orthopedic surgeon. Ex. 11 at 15. Petitioner reiterated to Dr. Kovacevic that she had been experiencing left shoulder pain since receiving a flu vaccine on August 22, 2020 at her local CVS pharmacy. *Id*. She noted that she felt pain while reaching out in front of her body and across her body. *Id*. She also noted that she had cut back on exercising because of her left shoulder pain. *Id*. X-ray imaging taken that day was unremarkable. See Ex. 11 at 19. On physical examination, Petitioner's left shoulder active ROM was noted to be identical to the ROM in her right shoulder. Ex. 11 at 19. Petitioner demonstrated full strength and had no pain with external rotation, cross-body abduction, scapularis, Jobe, O'Brien, Speed's, and Yergason's testing. *Id*. She did, however, wince in pain with Hawkins impingement and Neer impingement testing. *Id*. Dr. Kovacevic's diagnosis was left shoulder impingement, and his plan was as follows: (1) apply Voltaren gel three times per day; (2) attend physical therapy ("PT") to work on rotator cuff strengthening and ROM; (3) avoid heavy lifting and activities that cause sharp pain; and (4) return for reassessment in four to six weeks. Ex. 11 at 19.

On September 24, 2020, Petitioner went for an initial PT evaluation. Ex. 8 at 7-8. She reported that she had lost the ability to use her left arm for most activities of daily living ("ADLs") and that she was currently experiencing ten out ten pain. *Id*. at 7. Petitioner's therapist noted that she was able to tolerate their initial session but was extremely apprehensive about active ROM testing. *Id*. at 8. The therapist educated Petitioner on what he thought appeared to be "acute bursitis and acute onset of shoulder impingement, as potential for acute inflammatory response to flu vaccine." *Id*. The therapist further noted that Petitioner's prognosis was fair and recommended that she attend PT twice per week for six weeks. *Id*.

On October 2, 2020, Petitioner saw orthopedist Brandon Erickson, M.D., complaining of left shoulder discomfort that had increased over the prior several weeks. Ex. 9 at 14. On physical examination, Petitioner demonstrated full ROM of her left shoulder with pain only at maximal abduction and forward flexion, tenderness on palpation over the deltoid just off the lateral border of the acromion, and good strength testing of the rotator cuff throughout. *Id*. Dr. Erickson's assessment was: (1) other sprain of left shoulder joint and (2) pain of left shoulder region. Id. at 15. His plan was to send Petitioner for MR imaging and see her for a follow-up visit afterwards. *Id*.

On October 13, 2020, Petitioner attended her sixth and final PT session. Ex. 8 at 17-18. She told her therapist that she was feeling "a bit sore" from their last session but had no increase in acute symptoms. *Id*. at 17. She further noted that the acute nature of her symptoms was less than when she started therapy but that her pain was still limiting her in her daily life. *Id*. The therapist noted that Petitioner had some pain and discomfort

throughout her shoulder during her therapy exercises that day but that they were able to increase her active ROM with less immediate discomfort afterwards. *See id.* at 18.

On October 16, 2020, Petitioner underwent an MRI of her left shoulder, which revealed mild insertional tendinosis and low-grade fissuring of the teres minor and moderate regional interstitial edema and adjacent bursitis. Ex. 6 at 6. The interpreting radiologist thought the findings "may suggest an inflammatory bursitis related to injection." *Id*.

Two months post-vaccination, on October 23, 2020, Petitioner returned to see Dr. Erickson for her planned follow-up visit. Ex. 9 at 11-12. During the visit, she reported that she had stopped doing physical therapy and was feeling better. *Id*. at 11. On examination, she had full motion of her shoulder but still had some discomfort with certain movements, including with resisted external rotation at 90 degrees of abduction. *Id*. Dr. Erickson noted that Petitioner's MRI showed subacromial bursitis with potentially a small tear of the teres minor. *Id*. His assessment was "[o]ther sprain of left shoulder joint" and "[l]eft shoulder subacromial bursitis in the setting of a recent flu shot." *Id*. at 12. Dr. Erickson thought that Petitioner would benefit from a one-time steroid injection followed by PT. *Id*. Petitioner agreed with Dr. Erickson's plan and was administered a steroid injection. *Id*.

Petitioner did not seek further medical attention for her left shoulder for the next five months. Ex. 9 at 10. On January 11, 2021, Petitioner filed her Vaccine Program Petition. On February 3, 2021, she was ordered to file additional records, including "[r]ecords evidencing that the vaccine related injury persisted for at least six months . . ." ECF No. 5 at 3. On March 29, 2021, Petitioner called her orthopedist's office to report recurrent left shoulder pain. Ex. 9 at 10. She spoke with Dr. Erickson and informed him that the steroid injection he had given her had helped relieve her symptoms, but that her pain had recently returned. *See id.* Dr. Erickson suggested she try acupuncture to help with the pain. See id. Petitioner received left shoulder acupuncture treatment on March 30, 2021, April 2, 2021, April 6, 2021, April 13, 2021, and April 22, 2021. Ex. 4 at 4-8. Since April 22, 2021, there are no records of Petitioner receiving further treatment on her shoulder.

### B. Witness Statement

Petitioner has submitted a sworn affidavit, executed on February 8, 2022, in support of her claim. Ex. 2. In it, Petitioner describes how the vaccine was given very high on her left shoulder, that as a result of her vaccination she sustained subacromial bursitis and shoulder impingement syndrome, and that her injury began within 48-hours of vaccination and lasted for more than six months. *Id.*

4

## II. Parties' Respective Arguments

Petitioner argues that preponderant evidence establishes that she received the flu vaccine in her left arm, that she had onset of symptoms within 48 hours after vaccination, and that she is accordingly entitled to compensation for her Table SIRVA claim. Motion at 2. Respondent argues that Petitioner has not preponderantly established that she received the subject flu vaccine in her left arm, given the vaccine administration record. Response at 7-8. Respondent further argues that she has not established that she suffered the residual effects or complications of her alleged SIRVA for more than six months. *Id.* at 8-9.

## III. Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to

document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

IV. Analysis

   II. Fact Findings – Onset and Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. *See* § 11(c)(1)(A)(B)(D)(E).

6

petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

### A. Factual Findings Regarding Vaccination Situs

Respondent notes that the vaccine administration record documents an injection in Petitioner's *right* arm, not her left. Response at 7. Respondent then argues that Petitioner has failed to offer preponderant evidence that she received the vaccination in her left arm as alleged, because she has failed to produce any extrinsic evidence and that any later statements that she received the flu vaccination in her left arm should not outweigh the contemporaneous medical record that clearly documents administration in her right arm. *Id.* at 7-8.

Upon consideration of the record, I find that it is more likely than not that the notation for administration in the right arm for the August 22, 2020 vaccination is in error. This kind of documented vaccine administration error has previously been noted as "an issue that arises repeatedly in the specific context of SIRVA, both because SIRVA is a localized injury occurring near the site of injection and that because experience . . . has shown that pharmacy vaccine administration records are not necessarily reliable in documenting injection site." *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No., 2021 WL 1940435, at *6 (Fed. Cl. Spec. Mstr. Apr. 19, 2021). In *Mezzacapo*, testimony given by a Rite Aid pharmacist established that this error typically stems from inputs to be completed prior to the actual vaccination, because the request must be processed through the vaccinee's insurance, and that she always listed a left-arm injection site because most people are right-hand dominant. *Mezzacapo,* 2021 WL 1940435, at *6. This testimony was deemed consistent from similar testimony from other pharmacists in other cases. *Id.*

Although the record in the instant case does not contain any comparably-strong extrinsic evidence, I note that in every medical visit associated with her SIRVA, Petitioner consistently described the inciting event as a flu vaccine received in her left shoulder. In this case, that is enough to meet the preponderant test.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of evidence supports the conclusion that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA. Respondent has not argued, whether in his briefing on entitlement or at the expedited entitlement hearing on November 17, 2025, that Petitioner has failed to establish *any* of the QAI requirements for establishing a Table SIRVA. For the sake of completeness however, this written decision shall briefly review them as they apply to the record.

First, there is no evidence in the record that Petitioner had ever previously experienced symptoms of pain or loss of ROM in her left shoulder prior to receiving the subject flu vaccination in 2020

Second, Petitioner's first symptom likely began within 48 hours following her vaccination. Twelve days post-vaccination, Petitioner saw her PCP complaining of left shoulder pain, stating that following receiving a flu vaccine at her local pharmacy which was painful, her shoulder had not stopped hurting since. Ex. 7 at 33. In every report of pain, Petitioner has consistently indicated it began right after her flu vaccination. Therefore, Petitioner has proven this requirement.

Third, there is nothing in the record which documents pain and limited range of motion in any part of Petitioner's body other than her left shoulder, nor has Respondent indicated he believes there is any documented evidence.

Finally, there is no evidence of another condition or abnormality which would explain Petitioner's symptoms. There is insufficient evidence in the record to suggest any alternative cause of Petitioner's left shoulder issues and Respondent does not argue against this. Accordingly, Petitioner has established all the necessary QAI requirements for entitlement for her SIRVA.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on August 22, 2020. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 4; Section 11(c)(1)(E) (lack of prior civil award).

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of their left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement).

Respondent has argued that starting from August 24, 2020 (48 hours after vaccination), the medical records do not reflect that Petitioner suffered the effects of her injury for more than six months. Specifically, Respondent argues that the five-month gap

9

in treatment between Petitioner's October 23, 2020, follow-up visit with Dr. Erickson, and her March 29, 2021, telephone call with Dr. Erickson, strongly undermines her allegation that her symptoms persisted throughout that time period. Response at 9. Respondent further notes that during this five-month treatment gap, Petitioner had telehealth visits with her PCP during which she never raised any shoulder related issues. *Id.* at 9-10.

Petitioner has established that her left shoulder symptoms likely persisted for at least six months. As I noted at the expedited entitlement hearing, it is not uncommon for a petitioner who receives a steroid injection to experience long periods of complete or near-complete relief from their symptoms. Therefore, a gap of several months does not necessarily undercut a finding of severity in favor of a petitioner. At most, it speaks to the mildness of the injury and the potential amount of pain and suffering damages.

In this case, the record establishes Petitioner as having suffered a very mild injury – Petitioner's treatment course involved six PT sessions, five sessions of acupuncture, one steroid injection, one MRI, and one x-ray. As I noted at the entitlement hearing, I would not expect compensation in this case to exceed $20,000.00 for pain and suffering.

Ultimately, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. A damages order will be entered following the issuance of this ruling to direct the parties of the next steps in resolving damages.**

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master